# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-375V
(to be published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| THOMISA BROWN, on behalf of B.F., | * | |
| | * | Chief Special Master Corcoran |
| Petitioner, | * | |
| | * | |
| v. | * | Filed: September 20, 2021 |
| | * | |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Mark Theodore Sadaka,* Law Offices of Sadaka Associates, LLC, Englewood, NJ, Petitioner.

*Meghan Murphy,* U.S. Dep't of Justice, Washington, DC, Respondent.

### DECISION GRANTING ATTORNEY'S FEES AND COSTS[1]

On April 2, 2020, Thomisa Brown filed a petition on behalf of B.F., her minor son, seeking compensation under the National Vaccine Injury Compensation Program ("Vaccine Program").[2] Petitioner alleged that B.F. had experienced vaccine-induced alopecia areata resulting in depression after the administration of the meningococcal, tetanus/diphtheria/pertussis, and human papillomavirus vaccines on April 5, 2017, and an additional HPV vaccine dose on April 18, 2018, which allegedly worsened the loss. Petition (ECF No. 1) at 1-3. Less than a year and one-half after

---

[1] Because this Decision contains a reasoned explanation for my actions in this case, it must be posted on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

filing, however, Petitioner moved for dismissal of the claim on August 13, 2021 (ECF No. 37), and a decision granting the motion was entered on August 17, 2021. ECF No. 38.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated Aug. 26, 2021 (ECF No. 39) ("Motion"). Petitioner requests $36,719.24 in attorney's fees and costs for the work of one attorney, Mr. Mark Sadaka, and one paralegal, Ms. Michele Curry. *Id.* at 4. Respondent opposed the fees request on September 9, 2021. *See* Response, dated Sept. 9, 2021 (ECF No. 40) ("Response"). Respondent contends that Petitioners have failed to establish a reasonable basis for their claim, and are thus not entitled to a discretionary award of attorneys' fees and costs. *Id.* at 7. Petitioners reacted to Respondent's objection on September 16, 2021. *See* Reply, dated Sept. 16, 2021 (ECF No. 41) ("Reply").

For the reasons set forth below, I hereby **GRANT** Petitioner's motion, awarding fees and costs in the total amount of **$36,719.24**.

## ANALYSIS

**I.    Petitioner's Claim had Reasonable Basis**

Although the Vaccine Act only guarantees a reasonable award of attorney's fees and costs to *successful* petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g., Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020).

In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the *claim* itself—counsel's conduct in prosecuting the claim is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard

that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).[3]

This case was dismissed before Petitioner had filed an expert report in favor of her claim. But Respondent contends that the medical records themselves do not provide any basis for a claim. The existence of B.F.'s alopecia, for example, is not evident in the record until March 2, 2018 - ten months after the April 2017 vaccinations – and to have first manifested within a month after the first vaccination. Response at 7; Ex. 2 at 99, 127. The only evidence to the contrary is Petitioner's assertion that a bald patch on B.F.'s scalp was noticed three to four weeks after the initial vaccinations. Response at 7. Petitioner had taken B.F. to the doctor on several occasions prior to the hair loss being mentioned, which Respondent argues undermines the argument that the hair loss occurred earlier. *Id.* Respondent further maintains that a ten-month onset lacks medical substantiation, especially since no expert support was ever offered in favor of it. *Id.* at 8. Petitioner's contention that her expert consultation provided *some* support for the medical acceptability of onset is not specifically supported, since the sole expert-related "evidence" is the fact of the expert's retention by counsel. *Id.*; Ex. B at 8.

In reaction, Petitioner argues that the claim did in fact possess a reasonable basis. She notes that her affidavit establishes B.F.'s initial hair loss within three to four weeks after the April 2017 vaccinations, adding that whether that evidence deserves more or less weight than the record itself presents a question of fact (and thus stands as objective proof in support of the claim). Reply at 1. She adds that she was unaware at the time the hair loss could be vaccine-caused (thus explaining in part why she did not take B.F. in for treatment of it immediately). *Id.* Rather, only after B.F. had a haircut was the full extent of the hair loss observed, at which time it was brought to the doctor's attention. *Id.* at 1-2; Ex. 1 at 5, 7, 9; Ex. 2 at 102. Petitioner further contends that Respondent's opposition ignores the significant aggravation component of her claim, which alleges that B.F.'s hair loss increased after the second HPV vaccine dose. *Id.* at 3-4. And she maintains that the HPV vaccine's propensity to trigger alopecia is corroborated by medical literature (although none was filed in this matter). Motion at 4. Petitioner also notes that at least eight cases have been settled in this Program with this kind of injury. *Id.*

Respondent raises some reasonable objections to the claim's viability to which I would

---

[3] *See also Chuisano*, 116 Fed. Cl. at 285 (cautioning against rigid rules or criteria for reasonable basis because they would subvert the discretion of special masters and stating that an amorphous definition of reasonable basis is consistent with the Vaccine Act as a whole).

3

have given great weight – had the matter been litigated to a decision. In particular, the timeline of ten months to onset after the first set of vaccines is problematic. The claim of worsening after the second HPV dose is somewhat undercut by the fact that the alopecia was only observed (as far as the record goes) shortly *before* this dose, and it is not evident that the tempo of loss thereafter increased. The fact that prior similar cases have settled has very limited significance.

Nevertheless, I find that there was sufficient objective basis in support of the claim (a standard that does *not* require the claimant to show a likelihood of success) to entitle her to fees and costs award. Respondent's arguments about factual weaknesses in the claim do not establish that *no* cognizable injury occurred. Moreover, while I agree with Respondent that onset would likely have been far too remote to implicate the first set of vaccines received (despite Petitioner's arguments that hair loss had occurred), the significant aggravation portion of the claim involved a faster onset that was record-corroborated, with visits to a dermatologist and the Emergency Room at Richland Memorial Children's Hospital after the second HPV dose for treatment of increased hair loss. Ex. 1 at 8-9; Ex. 3 at 321-36. Beyond this, B.F. was also seen at his primary care for depressive symptoms stemming from the hair loss. Ex. 2 at 127-31. And the claim otherwise offered a reasonably-sound medical concept to support the causation and/or significant aggravation theories – something I have recognized in prior matters I decided. *See DeLozier v. Sec'y of Health & Hum. Servs.*, No. 15-124V, 2019 WL 7556051 (Fed. Cl. Spec. Mstr. Dec. 10, 2019), *aff'd in part*, 152 Fed. Cl. 558 (2021).

It cannot be said that this kind of claim could not succeed under these facts, and thus the matter was reasonably brought. Petitioner also readily requested dismissal once she ascertained the matter could not go forward. I thus find a fees award appropriate despite the fact that Petitioner did not prevail.

## II.     Calculation of Fees

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method - "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot.*

*Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorneys and support staff, based on the years work was performed:

| Attorney | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|
| **Mr. Mark Sadaka, Esq.** | $396.00 | $405.00 | $422.00 | $444.00 |
| **Paralegal** | | | | |
| **Ms. Michele Curry** | $150.55 | $156.00 | $163.00 | $172.00 |

ECF No. 39 at 4.

Mr. Sadaka practices in Englewood, New Jersey -- a jurisdiction that has been deemed "in forum." Accordingly, he is entitled to the rates established in *McCulloch*. *See Jaffri v. Se'y of Health & Hum. Servs.*, No. 13-484V, 2016 WL 7319407, at *5–6 (Fed. Cl. Spec. Mstr. Sept. 30, 2016). The rates requested for Mr. Sadaka are also consistent with what has previously been awarded them in accordance with the Office of Special Masters' fee schedule.[4] *Miller on behalf of A.M. v. Sec'y of Health & Hum. Servs.*, No. 18-587V, 2021 WL 3674659 at *3 (Fed. Cl. Spec. Mstr. July 20, 2021). I thus find no cause to reduce them in this instance. I also deem the time devoted to the matter reasonable, and therefore award fees for all work performed on the case as requested in the fee's application.

### III. Calculation of Attorney's Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002); *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No.10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as by not providing appropriate documentation to explain the basis for a particular cost, special

---

[4] OSM Attorneys' Forum Hourly Rate Fee Schedules, https://www.uscfc.uscourts.gov/node/2914 (last visited Mar. 22, 2021).

masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks $3,519.78 in costs incurred since the claim's filing, including medical record retrieval costs and fees for the work of expert M. Eric Gershwin, M.D. ECF No. 39, Ex. 2. Dr. Gershwin was paid a retainer of $2,500.00. *Id.* I find Dr. Gershwin's retainer to be reasonable and find no reason to make any reductions for this value. Even though Dr. Gershwin's work on the case did not ultimately result in a filed expert report, his input may well have served a role in causing Petitioner to opt to dismiss the case, and thus his involvement in the matter had utility. Medical record retrieval costs are typical in Program cases and are thus eligible for reimbursement and I do not find any of the requested costs in this matter unreasonable. Mailing and Distribution costs are also typical, and I do not find any of these costs unreasonable. Thus, they shall also be awarded in full without reduction.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioner's Motion for Attorney's Fees and Costs in its entirety, and award a total of **$36,719.24,** reflecting $33,199.46 in attorney's fees and $3,519.78 in costs, in the form of a check made jointly payable to Petitioners and their attorney Mr. Mark Sadaka. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[5]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.